# Prejudgment Interest Under the Back Pay Act for Refunds of Federal Insurance Contributions Act Overpayments

The Back Pay Act's authorization of prejudgment interest does not apply to the return of a Federal Insurance Contributions Act tax overpayment.

Even if the Back Pay Act did apply to such returns, an agency's specific exemption from liability under the Federal Insurance Contributions Act would override the provisions of the Back Pay Act.

May 31, 1994

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF DEFENSE

This memorandum responds to your Office's request for our opinion whether civilian employees of the Department of Defense ("DoD") who receive from the Internal Revenue Service ("IRS") a refund of taxes that were deducted from their pay pursuant to 26 U.S.C. § 3121(a) of the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101-3128 ("FICA"), as amended, are entitled to receive prejudgment interest on the refund from DoD pursuant to the Back Pay Act, 5 U.S.C. § 5596, as amended. We conclude that these DoD employees are not entitled to receive additional interest from DoD.

## I.
## BACKGROUND

FICA imposes a tax on the income of every employee, calculated as a percentage of wages, for the support of old-age, survivors, disability, and hospital insurance. 26 U.S.C. § 3101. A corresponding payroll tax for the same purpose is imposed on every employer with respect to each employee. *Id.* § 3111. Under FICA, every employer must deduct its employees' share of the FICA tax from their wages "as and when paid." *Id.* § 3102(a). All sums collected must be paid over to the IRS. *Id.* § 3102(b). In 1983, FICA taxation was extended to all subsequently hired civilian federal employees. *See* Social Security Act Amendments of 1983, Pub. L. No. 98-21, § 101(b)(1), 97 Stat. 65, 69 (codified as amended at 26 U.S.C. § 3121(b)(5), (6)); S. Rep. No. 98-23, at 5 (1983). Each federal agency is treated as a separate employer for purposes of FICA. *See* 26 U.S.C. § 3122.

Certain civilian DoD employees receive allowances for living quarters and for temporary lodging costs pursuant to the Overseas Differentials and Allowances Act, 5 U.S.C. § 5923, as amended ("ODAA allowances"). ODAA allowances have

127

always been expressly exempted from income tax. *See* 26 U.S.C. § 912(1)(C); *Anderson v. United States*, 929 F.2d 648, 649 (Fed. Cir. 1991). Because FICA does not expressly exempt ODAA allowances from taxation, an issue arose as to whether such payments were taxable for that purpose. DoD concluded that they were and, accordingly, deducted appropriate sums from its employees' ODAA allowances and paid those funds over to the IRS. *See Anderson v. United States*, 16 Cl. Ct. 530, 532-33 (1989) At least some of the affected employees filed administrative claims for refunds, which the IRS denied. *Id.* at 533-34.

The IRS's denial of these claims did not survive judicial scrutiny. In *Anderson*, a number of DoD employees brought suit against the United States, seeking a refund of the FICA taxes paid on ODAA allowances for the years 1984 through 1987. The Court of Federal Claims granted them summary judgment, holding that ODAA allowances are exempt from FICA taxation. 16 Cl. Ct. at 541. The decision was affirmed on appeal. *Anderson v. United States*, 929 F.2d 648 (Fed. Cir. 1991). The United States did not petition the Supreme Court for a writ of certiorari. As a result of *Anderson*, certain DoD employees (and other similarly situated federal employees) will receive refunds of the contested FICA taxes ("*Anderson* employees").

## II.
## ISSUE FOR CONSIDERATION

We have been asked to determine the amount of interest that must be paid on FICA tax refunds to *Anderson* employees. Absent a waiver of sovereign immunity, the United States and its agencies are not liable for prejudgment interest. *See, e.g.*, *Library of Congress v. Shaw*, 478 U.S. 310, 310, 314-15 (1986); *Loeffler v. Frank*, 486 U.S. 549, 554, 556-57 (1988). The Internal Revenue Code ("Code") contains such a waiver with respect to refunds of FICA tax overpayments. *See* 26 U.S.C. §§ 6413(b), 6611(a). The Office of Personnel Management ("OPM") and DoD agree that the IRS must pay *Anderson* employees prejudgment interest on their FICA tax refunds pursuant to these provisions.

The Back Pay Act, however, also expressly permits prejudgment interest on an award of "back pay," as defined by that Act. *See* 5 U.S.C. § 5596(b); *Brown v. Secretary of the Army*, 918 F.2d 214, 216-18 (D.C. Cir. 1990), *cert. denied*, 502 U.S. 810 (1991). OPM believes that *Anderson* employees are entitled to receive interest on their refunds under the Back Pay Act. *See* Letter for Albert V. Conte, Director, Defense Finance and Accounting Service, Department of Defense, from Constance Berry Newman, Director, Office of Personnel Management at 1 (Apr. 27, 1992) ("Newman Letter"); Letter for Philip M. Hitch, Deputy General Counsel (Fiscal), Department of Defense, from Arthur Troilo III, General Counsel, Office of Personnel Management at 3-4 (Nov. 30, 1992) ("Troilo Letter"). Accordingly, OPM instructed federal agencies that: "Because IRS computes interest in a manner

that would result in a smaller interest payment to employees, agencies must compute interest due employees under the back pay law (5 U.S.C. 5596)." Attachment to Memorandum for Directors of Personnel from Claudia Cooley, Associate Director for Personnel Systems and Oversight at 3 (Dec. 3, 1991). OPM further instructed that each agency must add to the IRS's interest payment an amount sufficient to make the total equal to the larger amount of interest prescribed under the Back Pay Act. Newman Letter at 1-2. OPM suggests that agencies failing to make this payment could be held liable for the additional amount. Troilo Letter at 3, 4. DoD's position is that it has no legal obligation to pay any additional interest.[1]

## III.
## LEGAL ANALYSIS

We conclude that the Back Pay Act's authorization of prejudgment interest does not apply to the return of a FICA tax overpayment. The Back Pay Act was not intended to remedy this type of injury. Indeed, as discussed below, FICA contains a provision that exempts employers from liability in these circumstances. Consequently, there is no legal basis for OPM's instruction to agencies to pay additional interest computed under the Back Pay Act.

### A. THE REQUIREMENTS FOR APPLICATION
### OF THE BACK PAY ACT ARE NOT MET

The Back Pay Act provides:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

> ... is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

---

[1] DoD estimates that paying additional interest under the Back Pay Act would cost approximately $7 million Memorandum for Daniel L Koffsky Acting Assistant Attorney General, Office of Legal Counsel, Department of Justice, from Jamie S. Gorelick, General Counsel, Department of Defense at 6 (June 21, 1993).

> . . . an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period.

5 U.S.C. § 5596(b).

In general, the Back Pay Act grants a cause of action to an employee who has lost pay as a result of a wrongful personnel action. Its purpose is to permit such an employee to recover money damages sufficient to make the employee whole. *United States v. Testan*, 424 U.S. 392, 407 (1976); *Wells v. FAA*, 755 F.2d 804, 807 (11th Cir. 1985). The need for the Act arises "by the fact that, absent specific command of statute or authorized regulation, an appointed employee subjected to unwarranted personnel action does not have a cause of action against the United States." *United States v. Hopkins*, 427 U.S. 123, 128 (1976). The Supreme Court repeatedly has adhered to a narrow construction of the Back Pay Act, finding that it authorizes money damages only in the "'carefully limited circumstances'" expressly set forth in the statute. *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (quoting *United States v. Testan*, 424 U.S. at 404).

OPM maintains that the Back Pay Act applies concurrently with the provisions of the Code as a remedy for an agency's erroneous deduction of too much FICA tax from its employees' earnings. OPM has not, however, cited (nor have we found) any reported decision applying the Back Pay Act in such circumstances. In light of the Supreme Court's strict construction of the Back Pay Act, the absence of authority suggests that OPM's novel application should be approached with skepticism.

OPM, moreover, has not demonstrated that the specific requirements of a Back Pay Act action have been met. The first requirement is that an employee must have been subject to an "unjustified or unwarranted personnel action." The legislative history of the Back Pay Act discusses the types of personnel actions falling within its purview:

> H.R. 1647 does not prescribe the specific types of personnel actions covered. Separations, suspensions, and demotions constitute the great bulk of cases in which employees lose pay or allowances, but other unwarranted or unjustified actions affecting pay or allowances could occur in the course of reassignments and change from full-time to part-time work. If such actions are found to be unwarranted or unjustified, employees would be entitled to backpay benefits when the actions are corrected.

130

S. Rep. No. 89-1062, at 3 (1966); *see United States v. Testan*, 424 U.S. at 405-06 (quoting this cited legislative history).

The examples given in the Senate report all involve an alteration of the terms of employment, such as the downgrading of an employee's appointed position, that cause an employee to earn less money. The damages owed to the employee equal the reduction of earnings arising out of the adverse personnel action. In contrast, the *Anderson* employees did not suffer a loss of earnings: they concededly earned the money that was deducted from their paychecks. Their claim, rather, was that the United States was indebted to them to the extent that the FICA deductions exceeded their actual tax liability. *See Stone v. White*, 301 U.S. 532, 534-35 (1937) (claim of tax overpayment is in the nature of one for money had and received); *King v. United States*, 641 F.2d 253, 259 (5th Cir. 1981) (same); *Missouri Pac. R.R. Co. v. United States*, 338 F.2d 668, 670 (Ct. Cl. 1964) (taxpayer bringing action for refund must show payment of excess taxes that equitably belong to him or there can be no recovery). At least one court has held that a claim for money due is not cognizable under the Back Pay Act:

> Mere failure by a government agency to pay money due is not the kind of adverse personnel action contemplated in the Back Pay Act. We are not called upon to correct an adverse personnel action. . . . Plaintiffs' claims are analogous to ones for unpaid salary for time actually worked.

*Bell v. United States*, 23 Cl. Ct. 73, 77 (1991). Thus, we conclude that DoD's erroneous deduction of too much FICA tax was not an adverse personnel action within the contemplation of the Back Pay Act. OPM has not called our attention to, and we have not discovered, any decision that might compel a different conclusion.

A second essential element under the Back Pay Act is that the personnel action must have caused the "withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." OPM suggests that an agency's deduction of too much FICA tax constitutes a reduction in pay (or, in this case, allowances). Section 3123 of FICA, however, provides:

> Whenever under . . . [FICA] . . . an employer is required or permitted to deduct any amount from the remuneration of an employee and to pay the amount deducted to the United States, . . . then for purposes of [FICA] *the amount so deducted shall be considered to have been paid to the employee at the time of such deduction.*

26 U.S.C. § 3123 (emphasis added). *See Pope v. University of Washington*, 852 P.2d 1055, 1062 (Wash. 1993), *cert. denied*, 510 U.S. 1115 (1994); IRS Private

Ruling 7702012130A, 1977 PRL Lexis 60. *Cf. Slodov v. United States,* 436 U.S. 238, 243 (1978) ("[o]nce net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment"). DoD was "required or permitted" to determine the amount of remuneration subject to tax and to make the appropriate deduction. *See* 26 U.S.C. § 3102(b); *id.* § 3122. Thus, the deductions at issue here must be considered as having been paid to the *Anderson* employees.[2]

Finally, the Back Pay Act requires that the employing agency have been found by an "appropriate authority" to have engaged in a wrongful personnel action. OPM has defined this term in its regulations: *"Appropriate authority* means an entity having authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action, including . . . the Office of Personnel Management." 5 C.F.R. § 550.803.

OPM regards itself as the "appropriate authority" that has found that DoD has engaged in a wrongful personnel action with respect to the *Anderson* employees:

> OPM clearly meets the definition [of an "appropriate authority" set forth in 5 C.F.R. § 550.803] . . . and, in addition, is specifically mentioned as such an authority [in the regulation]. . . . In the case of the FICA tax issue, OPM, consistent with its mission as the Federal personnel administrator, was compelled to issue guidance to Federal agencies setting forth instructions on how to implement the *Anderson* decision, including how to correct the erroneous withholdings of FICA taxes.

---

[2] Section 3123, by its terms, applies only "for purposes" of FICA. Thus, it is possible that the deduction might be treated as a non-payment of wages for purposes of some other statute. But there is no basis for doing so here, because the Back Pay Act is purely remedial: it restores pay lost to an employee from the violation of a right granted under another "applicable law, rule, regulation, or collective bargaining agreement." 5 U S C. § 5596(b) The "applicable law" in this case—FICA—expressly authorized DoD to make the contested deductions and commanded that they be considered as a payment of remuneration Thus, DoD's erroneous FICA deductions cannot serve as the predicate for an action under the Back Pay Act, which requires that the claimant have suffered a loss of pay resulting from a wrongful personnel action.

We note also that the clash of assumptions between FICA and the Back Pay Act concerning whether an agency's deduction of FICA tax is a payment of wages could expose the *Anderson* employees to unpleasant tax consequences if, as OPM proposes, the two schemes were applied concurrently. It is settled law that awards under the Back Pay Act are taxable earnings for FICA and income tax purposes, subject to tax withholding when they are paid to the employee. *See, e.g., Tanaka v. Department of Navy,* 788 F.2d 1552, 1553 (Fed. Cir. 1986), *Ainsworth v. United States,* 399 F 2d 176, 185-86 (Ct Cl 1968), *Kopp v. Department of Air Force,* 37 M.S P R 434, 436 (1988) This tax treatment comports with the theory that the Back Pay Act provides "'reparation . based upon the loss of wages which the employee has suffered from the employer's wrong.'" *Ainsworth,* 399 F 2d at 185 (quoting *Social Security Bd. v. Nierotko,* 327 U S 358, 364 (1946)). Thus, although ODAA allowances ordinarily are excluded from FICA and income taxation, the *Anderson* employees' recovery would be taxable as ordinary wage earnings if they were received as an award of back pay rather than as a tax refund (absent an equitable adjustment). This anomaly highlights the dubious nature of any suggestion that the Back Pay Act has a role to play in the return of a tax overpayment.

Troilo Letter at 3.

We do not agree that OPM is an "appropriate authority" under the Back Pay Act. Whatever OPM's authority to "issue guidance" to agencies concerning how to correct the FICA tax treatment of ODAA allowances in light of *Anderson*, it did not have authority to correct the improper FICA tax deductions contested in *Anderson*, which is "the case at hand." DoD was vested with initial authority to determine the amount of FICA tax to be deducted from its *Anderson* employees' pay. 26 U.S.C. § 3122. That determination was subject to review and correction by the Secretary of the Treasury. *Id.* (As noted in § I, *supra*, the Secretary agreed with DoD and allowed the deductions to stand.) The Secretary's decision was final within the executive branch. *See* 26 U.S.C. § 6406.[3] Judicial review of the Secretary's decision was available in either the federal district courts or the Court of Federal Claims. *See* 26 U.S.C. § 7422; 28 U.S.C. § 1346. (The *Anderson* employees proceeded in the Federal Claims Court.) In either case, the decision was not subject to further review by the executive branch. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792) (executive branch revision of final judgments of the judicial branch violates the separation of powers); *United States v. O'Grady*, 89 U.S. (22 Wall.) 641 (1874) (same). Thus, at no point did OPM have authority to "correct or direct the correction of" the decision to deduct FICA taxes from the ODAA allowances of the *Anderson* employees. Therefore, OPM does not meet the criterion set forth in its own regulation defining an "appropriate authority."

## B. OPM'S PROPOSED APPLICATION OF THE BACK PAY ACT IS INCONSISTENT WITH FICA'S EXPRESS GRANT OF AN EXEMPTION FROM LIABILITY FOR EMPLOYERS

As a general matter, the Code's remedial provisions have been held to be the exclusive remedy for those seeking a return of tax overpayments. *See, e.g., Bruno v. United States*, 547 F.2d 71 (8th Cir. 1976) (suit for refund of taxes was governed by the specific limitation period in the Internal Revenue Code and not the general limitations period for civil actions against the United States in title 28); *Michigan State Employees Ass'n v. Marlan*, 608 F. Supp. 85, 90-92 (W.D. Mich. 1984) (the existence of specific remedial procedures in the Internal Revenue Code to redress tax overpayments foreclosed any possibility of relief under 42 U.S.C. § 1983). In this case, moreover, Congress provided specific procedures to apply "[i]f more than the correct amount of [FICA] tax . . . is paid [by an employee] with respect to any payment of remuneration." 26 U.S.C. § 6413; *see* 26 C.F.R. § 31.6413. *See generally* Rev. Rul. 81-310, 1981-2 C.B. 241; Rev. Proc. 81-69, 1981-2 C.B. 726;

---

[3] Ordinarily, 26 U S C. § 6406 permits review of the Secretary's decisions by the Tax Court Such review was not available here because the Tax Court has no jurisdiction to adjudicate FICA tax liability 26 U.S.C. § 7442

*Atlantic Dep't Stores, Inc. v. United States,* 557 F.2d 957 (2d Cir. 1977); *Macy's New York, Inc. v. United States,* 484 F. Supp. 181 (S.D.N.Y. 1980); *Entenmann's Bakery, Inc. v. United States,* 465 F. Supp. 1118 (E.D.N.Y. 1979).[4] It seems unlikely that Congress intended the very general remedial provisions of the Back Pay Act to apply as well, thereby giving federal employees a more generous remedy than that available to employees in the private sector.

Even if the Back Pay Act were generally applicable here, OPM's proposal that each agency pay additional interest to its *Anderson* employees is inconsistent with § 3102(b) of FICA. That section provides that an employer who has collected FICA taxes and paid them over to the IRS "shall be indemnified against the claims and demands of any person for the amount of any such payment." *Id.*[5] An "indemnity" is a "legal exemption from liability for damages." American Heritage Dictionary of the English Language 917 (3d ed. 1992). Section 3102(b), furthermore, has been held to serve the same purpose as 26 U.S.C. § 3403,[6] which applies to the collection of income taxes. *See United States Fidelity & Guaranty Co. v. United States,* 201 F.2d 118, 119 (10th Cir. 1952) (equating 26 U.S.C. § 3102(b) with § 3403). Section 3403, in turn, invariably has been construed to mandate that an employer is immune from suit by its employees concerning federal income taxes that have been withheld by the employer and paid over to the IRS. *See, e.g., Edgar v. Inland Steel Co.,* 744 F.2d 1276, 1278 (7th Cir. 1984); *Pascoe v. IRS,* 580 F. Supp. 649, 654 (E.D. Mich. 1984), *aff'd,* 755 F.2d 932 (6th Cir. 1985); *Chandler v. Perini Power Constructors, Inc.,* 520 F. Supp. 1152, 1156 (D.N.H. 1981). Therefore, we conclude that § 3102 provides an employer with a legal exemption from liability to the extent of the amount of FICA taxes collected and paid over to the IRS.[7]

OPM's proposal that federal agencies pay their *Anderson* employees additional interest under the Back Pay Act contravenes this exemption. Under familiar prin-

---

[4] An employer has an incentive to calculate the tax correctly because its own share of the FICA tax mirrors that of its employees *See* 26 U S C § 3111. Also, an employer who has collected too much FICA tax is not permitted to receive a return of its own overpayment unless it has repaid the affected employees (or former employees) or has made a reasonable effort to perfect their claims for a refund *See* Rev Rul. 81-310, at 242.

[5] *See also* 26 C F.R § 31.3102-1(c) ("The employer is indemnified against the claims and demands of any person for the amount of any payment of such tax made by the employer to the district director ")

[6] Section 3403 provides

The employer shall be liable for the payment of the [income] tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment

[7] An indemnity can also be a "[s]ecurity against damage, loss, or injury." American Heritage Dictionary of the English Language at 917 Under the latter definition, § 3102(b) might be read as a promise to compensate employers for their liability arising out of the FICA tax collection process rather than as a legal exemption from liability in the first instance It is, however, a recognized rule of statutory construction that a waiver of sovereign immunity must be unequivocal. Thus, if two readings are plausible, the one that does not waive sovereign immunity must be adopted. *See United States v Nordic Village, Inc,* 503 U S 30, 33-37 (1992). Consequently, we read § 3102(b) as conferring a legal exemption Indeed, § 3102(b) fails to name an indemnitor, which supports our reading and also fatally undermines any claim that § 3102(b) contains an unequivocal waiver of sovereign immunity

ciples of statutory construction, the exemption in § 3102(b), which is specifically applicable to the collection of FICA taxes, must prevail over the more generally applicable interest provision of the Back Pay Act. *See Brown v. Secretary of Army*, 918 F.2d at 218 (Title VII's limit of two years on recovery of back pay would take precedence over the more generous term in the Back Pay Act when both remedies were facially available to federal employees who had successfully sued their employer under Title VII). *See generally Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961) (a provision of the Code specifically addressed to the computation of interest on carry-back tax refunds would prevail over provision on computation of interest on tax refunds generally); 2B Norman J. Singer, *Sutherland Statutory Construction* § 51.02 (5th ed. 1992) ("Where a conflict exists the more specific statute controls over the more general one."). Thus, even if the Back Pay Act's interest provision were facially applicable, it could not be applied in these circumstances.

## CONCLUSION

We conclude that DoD is not required to pay its *Anderson* employees any interest under the Back Pay Act. The Back Pay Act does not apply in these circumstances. Even if it did, the interest provision of the Back Pay Act must yield to the legal exemption from liability granted to employers under FICA. Thus, OPM's instruction to agencies to pay additional interest has no legal basis.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

135